**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                                    No. CR 06-1348  JB

RICHARD BERTOLLINI,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on: (i) the Defendant's Objections to the Presentence Report, filed May 2, 2007 (Doc. 24)("Objections"); and (ii) the Defendant's Addendum to Objections to the Presentence Report, filed June 1, 2007 (Doc. 28).  The Court held a sentencing hearing on June 19, 2007.  The primary issue is whether the Court should sustain Defendant Richard Bertollini's objections to the Pre-Sentence Investigation Report ("PSR") that the United States Probation Office ("USPO") prepared.  Because the Court finds that some of Bertollini's objections are well taken, the Court will sustain his objections in part and overrule them in part.

**FACTUAL BACKGROUND**

    The PSR makes some statements that may be read to suggest the Bertollini is a "white supremacist" and supports Neo-Nazi organizations.  While Bertollini strenuously denies such characterizations and accusations, he does not deny that he has had personal relationships with persons who can be properly so described.

    1.     **Neo-Nazi Associations**.

    Bertollini states that he has not been involved in any Neo-Nazi organization, and that he has

not provided support for any "white supremacist" or Neo-Nazi organization.  See Objections at 4.  Bertollini acknowledges that he had a relationship with Richard Butler, a noted "white supremacist" and founder of the Aryan Nation, but submits that their relationship was of a personal nature and did not involve Bertollini being actively engaged in the activities of Butler's organization.  See id.  Bertollini asserts that he was involved in publishing the Eleventh Hour Remnant Messenger, which he maintains was a Christian identity-outreach publication only.  See id.

Bertollini represents that he is a non-violent person who would not espouse violence towards others, regardless of his political beliefs.  See id.  Bertollini states that, while media entities and other groups have tried to connect him with organizations that espouse violence, he has tried to distance himself from such organizations.  See id.  Bertollini contends that the fact that he supported Butler on a personal level does not indicate that he supports Butler's political views or organization.  See id.

### 2.    **Sawed-Off Shotgun.**

Bertollini represents that, over twenty-five years ago, he altered a shotgun that was seized after his arrest on state charges that lead to the federal charges in this case.  See id. at 2-3.  Bertollini states that he placed his shotgun on a workbench, measured the barrel with a tape measure, marked the barrel where he was certain of the legal length, and cut and burnished the barrel at that point.  See id.  Bertollini submits that he never had occasion to doubt the legality of the shotgun's barrel length.  See id.

### 3.    **Arrest.**

For a number of years, federal law-enforcement officials sought Bertollini for Unlawful Flight to Avoid Prosecution for the felony of Driving Under the Influence in the State of Idaho.  See PSR ¶¶ 7, 36, at 4, 10.  Bertollini was initially arrested on April 12, 2006, in Santa Fe, New Mexico

on an interstate fugitive warrant. See id. at 1, ¶¶ 7-16, 36, at 4-6, 10.

At the time of his arrest, in reference to the shotgun that was seized, Bertollini stated that "I've had that thing forever and I know it's not illegal," Objections at 3, that "I did it in '82," PSR ¶ 13, at 5, and that "I've had it since then," id. Bertollini represents that he had no reason to doubt the legality of the shotgun's dimensions until he saw an agent from the Federal Bureau of Investigation insert a tape measure into the barrel. See Objections at 3. Bertollini asserts that, at that moment, he realized that he had made an error twenty-five years ago, see id. at 2-3; he measured the barrel length from the outside, not from the inside, see id.

In April 2006, Bertollini was transferred back to Idaho pursuant to rule 5 of the Federal Rules of Criminal Procedure. See id. at 1; PSR at 1. At that time, Bertollini's counsel informed him that the United States would not pursue gun charges against him. See Objections at 1. Bertollini has been in custody continuously since April 12, 2006. See id.; PSR at 1.

## PROCEDURAL BACKGROUND

After Bertollini was sent to Idaho, federal authorities in New Mexico charged Bertollini with being a fugitive in possession of a firearm and ammunition, the federal crime to which he has pled guilty. Bertollini finished his state sentence in February 2007. The Bureau of Prisons has taken the position that, even though the Federal Bureau of Investigation arrested him in April 2006, he will not receive credit on his federal sentence for any time detained before February 2007.

### 1.    Federal Indictment.

On June 13, 2006, a Sealed Indictment was returned charging Bertollini with being a Fugitive in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922 (g)(2) and 924(a)(2). See Indictment, filed June 13, 2006 (Doc. 1). The discovery of this offense flowed from Bertollini's April 12, 2006 arrest on a fugitive warrant. See PSR ¶¶ 7-15, 4-6. Various firearms

were found in Bertollini's possession.  See id. ¶¶ 13, 16-20, at 6-7.

## 2.    Idaho Sentencing.

On August 25, 2006, Bertollini was sentenced to one to three years imprisonment for Driving Under the Influence and Bail Jumping in the State of Idaho's Bonner County District Court.  See id. ¶¶ 48-49, at 13-15.  On October 10, 2006, a Writ of Habeas Corpus Ad Prosequendum was issued to the Bonner County Sheriff/United States Marshal to secure Bertollini's delivery to the United States District Court for the District of New Mexico for a hearing on October 20, 2006.  See id. at 1.  Bertollini was brought into federal custody on the Writ on November 3, 2006, and has remained in the physical custody of the United States Marshal since that date.  See id.  Bertollini completed the jail sentence for his Idaho State conviction on February 25, 2007.  See id.

## 3.    Plea.

Bertollini pled guilty to the June 13, 2006 federal Indictment on February 23, 2007.  See Plea Agreement at 2, 8, filed February 23, 2007 (Doc. 20).  In the Plea Agreement, Bertollini admits that, at the time he was detained, he possessed a loaded .12 gauge shotgun, with a barrel less than 18 inches in length, and a loaded .380 semi-automatic pistol.  See id. at 3.

## 4.    Objection to Face Sheet.

Bertollini objects to the Bureau of Prison's determination, as reported on the face sheet of the PSR, that he will not receive credit towards his federal sentence for any time in custody before February 25, 2007.  See Objections at 1-2.  The face sheet of the PSR, under the heading of **Custodial Status**, states:

> The defendant was arrested by the Federal Bureau of Investigation on April 12, 2006 and appeared for a detention hearing on April 14, 2006 at which time he was detained and extradited to the State of Idaho.  On June 14, 2006, an Arrest Warrant was issued for the defendant.  On October 10, 2006, a Writ of Habeas Corpus Ad Prosequendum was issued in this case to the Bonner County Sheriff/U.S. Marshal to

be delivered to the District of New Mexico for hearing set on October 20, 2006.  The
defendant was brought into federal custody on November 3, 2006.  The defendant
completed service of his sentence in Idaho on February 25, 2007.  According to the
Bureau of Prisons, the defendant will not receive credit towards his federal sentence
for any time in custody prior to February 25, 2007, while serving the state sentence
in Idaho, however, [he] may receive credit from February 25, 2007 up to his
sentencing date.

PSR at 1.

### 5. Objection to Paragraph 16.

Bertollini objects to the language in paragraph 16 of the PSR that indicates that he signed

a consent to search "his residence, located at 3471 Cerrillos Road, #63 in Santa Fe, New Mexico."

Id. ¶ 16, at 6.  Bertollini maintains that the residence at 3471 Cerrillos Road is not his and belongs

solely to his wife, Leslie Bertollini.  See Objections at 2.

### 6. Objection to Paragraph 19.

Bertollini objects to paragraph 19 of the PSR insofar as it indicates that he informed agents

that there were rifles in the closet of the 3471 Cerrillos Road residence.  See id.  Bertollini asserts

that Leslie, not he, told agents that the rifles were in the closet.  See id.

In the Addendum to the PSR, the USPO notes that it obtained the information in paragraph

19 to which Bertollini objects from the investigative reports.  See Addendum to the PSR at 3, dated

May 16, 2007 ("First Addendum").  The USPO also notes, however, that Leslie provided a statement

that contradicts the investigative reports.  See id.  Leslie represents that, during the search of the

residence at 3471 Cerrillos Road, Bertollini stood near the front door and she showed the agents

where the weapons were located.  See id.  Leslie stated that, with the exception of the .38 caliber

revolver kept in the night stand, Bertollini had no knowledge of the exact location of the weapons.

See id.

-5-

7.     **Objection to Paragraph 36.**

Paragraph 36 of the PSR states:

**Base Offense Level:** Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level is 20 if the offense involved a firearm that is described in 26 U.S.C. § 5845, and the defendant was a prohibited person at the time the defendant committed the instant offense.

According to the investigation report, the defendant was wanted for Unlawful Flight to Avoid Prosecution for Driving Under the Influence (DUI), a felony offense as the defendant had two prior DUI convictions, out of the State of Idaho.  Pursuant to 18 U.S.C. § 922(g)(2), a prohibited person includes any person who is a fugitive from justice.  Also according to the investigative report, the defendant was found in possession of nine firearms, one of which was a Mossberg .12 gauge model 500 AT, Serial Number # G446016.  A Special Agent with the ATF was notified and responded to the scene.  The agent measured the barrel of the shotgun found in the defendant's truck, and advised the shotgun had been altered and was illegal in length. Pursuant to 26 U.S.C. § 5845, includes a shotgun having a barrel or barrels of less than 18 inches in length, or overall length of less than 26 inches.  The investigative agent indicated the length of the barrel on the shotgun measured 16 inches.

PSR ¶ 36, at 10.

Bertollini objects to the USPO's determination of his base-offense level in paragraph 36 of the PSR.  See Objections at 2-3.  He contends that he did not possess the requisite mens rea to be found guilty of illegally possessing a sawed-off shotgun and that, therefore, his base-offense level under U.S.S.G. § 2K2.1 should be 14 rather than 20.  See id.

8.     **Objection to Paragraph 37.**

Paragraph 37 of the PSR states:

**Specific Offense Characteristic:** Pursuant to U.S.S.G. § 2K2.1(b)(1)(B), if the offense involved between eight and 24 firearms, increase by 4.  According to the investigative report, the defendant was found to have in his vehicle, an AMT .380 caliber handgun, Serial Number # A23021 in a holster located under the drivers seat. Agents also found the shotgun, a Mossberg .12 gauge model 500 AT, Serial Number # G446016.  The following firearms were recovered from under Mr. Bertollini's bed, closet and his wife's night-stand: One Taurus .38 caliber revolver, model 5093-85, Serial Number # 5H58783; one Smith and Wesson .22 caliber semi-automatic pistol model 22-S, Serial Number # UAV2154, with Tasco scope and two magazines; one

-6-

Glock .45 caliber, model 21 semi-auto pistol, Serial Number #BDN 250 with three magazines; one Marlin .22 caliber rifle, model 60, Serial Number #18535553 with Bushnell scope; one Remington .30-06 rifle, model 700, Serial Number # 6899903; one Mossberg .410 pump-action shotgun, Serial Number #P558004; and one Mossberg .12 gauge semi-auto shotgun, model19200, Serial Number # SF8776, totaling nine firearms.  Therefore, four levels are added.

PSR ¶ 37, at 10.

Bertollini objects to the USPO's 4-level enhancement of his offense level, documented in paragraph 37 of the PSR.  See Objections at 3-4.  He argues that there is insufficient evidence to establish that he possessed the seven firearms recovered from the 3471 Cerrillos Road residence, and that thus the 4-level enhancement should not apply.  See id.

9.      **Objection to Paragraph 73.**

Paragraph 73 of the PSR states:

According to the defendant, during the time he resided in Idaho, from 1997 to 2002, he did not maintain employment, but worked non-profit for the Christian Outreach News Letter, writing social and political articles for the Eleventh Hour Remnant Messenger.  He stated he earned no income during that time, and supported himself by borrowing money from an associate who was a millionaire.  Information contained in the investigative reports corroborates his association with Carl E. Story, whom the defendant reported he currently owes a substantial amount of money to, and the two having been reported to develop ties with the neo-Nazi Aryan Nations and America's Promise Ministries, both promoters of the anti-Semitic Christian Identity religion.  They are reported to have created their own neo-Nazi organization, that being the Eleventh Hour Remnant Messenger.

PSR ¶ 73, at 20.

Bertollini objects to the language in paragraph 73 of the PSR, referring to his reported involvement with neo-Nazi and anti-Semitic organizations.  See Objections at 4.  Bertollini asserts that he has never been involved with or supported a "white supremacist" or neo-Nazi organization, and that the publication he was affiliated with, the Eleventh Hour Remnant Messenger, was a Christian identity-outreach publication only.  See id.

-7-

10. **Objection to Paragraph 84.**

Paragraph 84 of the PSR states: "Based on the total offense level of 21 and a criminal history category of III, the guideline imprisonment range is 46 to 57 months." PSR ¶ 84, at 23. Based on his objections to paragraphs 36 and 37, Bertollini objects to the USPO's calculation of his advisory Guidelines' imprisonment range, contained in paragraph 84 of the PSR. See Objections at 5. Bertollini maintains that paragraph 84 should reflect a total-offense level of 12 and an advisory Guidelines' imprisonment range of 15 to 21 months. See id.

11. **Sentencing Hearing.**

At the hearing, Bureau of Alcohol Tobacco and Firearms Agent Raymond Montoya, Leslie, and Bertollini testified. Montoya testified that the legal barrel limit is 18 inches, see Transcript of Hearing at 25:12-14 (Montoya)(taken June 19, 2007)("Transcript"),[1] and that, on April 12, 2006, he measured the barrel of the sawed-off shotgun seized from Bertollini's vehicle at 16 3/4 inches, see id. at 27:9-12.

Leslie testified that, when she and Bertollini separated, she told him she was taking six of the firearms that were seized from her house so that they would not get lost and "that they would be with [her] and when he was ready for them, he knew where to get them." Id. at 49:3-6 (Bert). Leslie testified that: "I mean they (six of the firearms seized from 3471 Cerrillos Road) were his he could look at them anytime he wanted and he knew that so you know." Id. at 57:12-14. Leslie also testified that she owned the .38 found in her night stand and seized from her house. See id. at 50:3; 50:11-13; 50:24-25. With regard to Bertollini's access to her home, Leslie testified that, when he visited her, he would sometimes be given a key to her house, and that, frequently, they would not

---

[1] The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

lock the house so it was often unnecessary for him to have a key.  See id. at 52:4-16.  Additionally, Leslie testified that, on the day the weapons were seized from her house, her, Bertollini, and a few law-enforcement agents all went to the back of the house, to the master bedroom, to look for the firearms.  See id. at 53:7-12.

Bertollini testified that the .38 seized from the 3471 Cerrillos Road residence belonged to Leslie.  See id. at 64:2-6 (Bertollini).  At the hearing, Bertollini referenced the .38 as "Leslie's .38" and stated that "when I asked her to give it to the FBI agents[,] [s]he wasn't going to relinquish it because it was hers."  Id.

## 18 U.S.C. § 3585(b)(2)

18 U.S.C. § 3585(b)(2) provides:

> A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences, as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence.

18 U.S.C. § 3585(b)(2).  "[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing.  Rather, the authority resides with the Attorney General, as exercised by the federal Bureau of Prisons."  United States v. Brown, 212 Fed. Appx. 747, 755 (10th Cir. 2007)(internal citation omitted)(citing United States v. Jenkins, 38 F.3d 1143, 1144 (10th Cir. 1994)).  "The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing.  As a result, a federal prisoner dissatisfied with computation of his sentence must pursue the administrative remedy available through the federal prison system before seeking judicial review of his sentence."  United States v. Luna-Mora, 180 Fed. Appx. 847, 849 (11th Cir. 2006)(internal quotations and citations omitted).

The Supreme Court held in United States v. Wilson, 503 U.S. 329 . . . (1992), that

§ 3585(b) does not authorize a district court to compute a sentence credit at sentencing for time served in pretrial detention. Rather, credit awards must be made by the Attorney General, through the Bureau of Prisons, after sentencing. In so holding, the [Supreme] Court recognized that under § 3585(b), Congress has indicated that computation of the credit must occur <u>after</u> the defendant begins his sentence. A district court, therefore, cannot apply § 3585(b) at sentencing.

<u>United States v. Jenkins</u>, 38 F.3d at 1144 (internal quotations, citations, and alterations omitted)(emphasis in original).

## LAW REGARDING FIREARMS POSSESSION AND MENS REA

In <u>Staples v. United States</u>, 511 U.S. 600 (1994), the Supreme Court of the United States considered whether the government needed to satisfy a mens rea element -- <u>i.e.</u>, demonstrate that a defendant knew of the features of his firearm that made it illegal -- to secure a conviction under the National Firearms Act, 26 U.S.C. §§ 5801-5872, where the weapon in question was a semi-automatic rifle that had been modified into a fully automatic rifle and the defendant contended that he did not know it had been so modified. See <u>Staples v. United States</u>, 511 U.S. at 603-04, 619. The Supreme Court ruled that, as an element of the offense of not registering a fully automatic weapon in the National Firearms Registration and Transfer Record, the government must prove beyond a reasonable doubt that the defendant knew the gun could fire automatically. See <u>id.</u> In reaching that conclusion, the <u>Staples</u> Court noted that "[g]uns in general are not deleterious devices or products or obnoxious waste materials that put their owners on notice that they stand in responsible relation to a public danger," and that the National Firearms Act did not put gun owners on sufficient notice "of the likelihood of regulation to justify interpreting [the Act] as not requiring proof of knowledge of the weapon's characteristics." <u>Id.</u> at 610-12. The Supreme Court in <u>Staples v. United States</u> also stated, however, that:

[While], despite their potential for harm, guns generally can be owned in perfect innocence. . . .  we might surely classify certain categories of guns -- no doubt

including machine guns, sawed-off shotguns, and artillery pieces that Congress has subjected to regulation -- as items the ownership of which would have the same quasi-suspect character we attributed to owning hand grenades in Freed [-- i.e., the owner would not be surprised to learn that possession is not an innocent act].

Id. at 611 (referencing United States v. Freed, 401 U.S. 601 (1971)).

At least two courts have examined the effect of the Supreme Court's decision in Staples v. United States on defendants who possessed sawed-off shotguns. In United States v. Barr, 32 F.3d 1320 (8th Cir. 1994), the United States Court of Appeals for the Eighth Circuit considered whether, to obtain a conviction under the National Firearms Act for failure to register, the government was required to prove that the defendant knew that the sawed-off shotgun she possessed had characteristics bringing it within the scope of the Act. See id. at 1322-24. The Eighth Circuit held:

A common-sense evaluation indicates that a specific jury finding of knowledge of the weapon's incriminating characteristics is unnecessary. Unlike the modified semi-automatic rifle in Staples, a sawed-off shotgun is clearly not a traditionally lawful weapon and [the defendant] had no legitimate expectation that the weapon was not subject to regulation.

* * * *

Where [] the characteristics of the weapon itself render it quasi-suspect, Staples does not require proof that the defendant knew of the specific characteristics which make the weapon subject to the Act. The Government need only prove that the defendant possessed the quasi-suspect weapon and observed its characteristics.

Id. at 1324.

In United States v. Barnett, No. 02-4099, 2004 WL 764128 (N.D. Iowa April 9, 2004), the United States District Court for the Northern District of Iowa considered whether an indictment must include the mens rea requirement of "knowingly" with respect to use of a weapon and the specific characteristics of that weapon where a defendant is charged with possessing a short-barreled firearm, in violation of the National Firearms Act, during a crime of violence. See id. at *3. In concluding that the government need not establish such mens rea, the Barnett court stated:

-11-

[P]articularly applicable to the present case is the <u>Staples</u> Court's recognition that sawed-off shotguns fall outside the category of guns that are widely accepted as lawful possessions. . . .  As a result, <u>Staples</u> supports the conclusion that the determination of whether the firearm at issue in this case was a "destructive device" as defined in 26 U.S.C. § 5845, triggering the sentencing enhancement specified in 18 U.S.C. § 924(c)(1)(B)(ii), <u>does</u> <u>not</u> require the Government to show [the defendant] was aware of the specific characteristics that brought the weapon under the definition of "destructive device."  The Eighth Circuit Court of Appeals has reached the same conclusion.

<u>United States v. Barnett</u>, 2004 WL 764128, at **4-5 (citing <u>United States v. Barr</u>, 32 F.3d at 1323, 1325)(emphasis in original).

## LAW REGARDING CONSTRUCTIVE POSSESSION OF FIREARMS

In <u>United States v. Ruckman</u>, 59 Fed. Appx. 280 (10th Cir. 2003), the United States Court of Appeals for the Tenth Circuit reviewed the district court's application of U.S.S.G. § 2K2.1(b)(1)(e), which provided a five-level enhancement for possessing between twenty-five and forty-nine firearms.  <u>See</u> 59 Fed. Appx. at 282.  In affirming the district court, the Tenth Circuit stated:

[A]n individual is considered to constructively possess an item when he or she knowingly holds the power and ability to exercise dominion and control over the property.  In situations involving joint occupancy, . . . more is required to establish constructive possession than dominion and control.  To prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking defendant to the firearms.  The requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms.

<u>Id.</u>

## ANALYSIS

A review of the applicable law and the facts brought before the Court demonstrate that some of Bertollini's objections are well taken.  The Court will, therefore, sustain Bertollini's objections in part and overrule them in part.

I.      **THE COURT WILL OVERRULE BERTOLLINI'S OBJECTION TO THE FACE SHEET.**

Bertollini objects to the Bureau of Prison's determination, reflected on the face sheet of the PSR, that he will not receive credit towards his federal sentence for time he spent in custody before February 25, 2007.  See Objections at 1-2.  The Court believes that the portion of the face sheet to which Bertollini objects accurately describes what the Bureau of Prisons intends to do.  The Court notes that, under 18 U.S.C. § 3585(b)(2), it is without jurisdiction to award credit for time served in custody before sentencing at sentencing, and that the Bureau of Prisons, not the district courts, is authorized to determine and award sentencing credit after sentencing.  See United States v. Luna-Mora, 180 Fed. Appx. at 849 ("The Bureau of Prisons, as opposed to the district courts, is authorized to compute sentence credit awards after sentencing."); United States v. Brown, 212 Fed. Appx. at 755 ("[A] sentencing court is without jurisdiction to award credit under § 3585(b) for time served in prior custody at sentencing."); United States v. Jenkins, 38 F.3d at 1144 (stating that a district court cannot apply § 3585(b) at sentencing).  The Court has been given no reason to question the contents of the face sheet to which Bertollini objects and, as such, the Court will overrule his objection to the face sheet.

II.     **THE COURT WILL SUSTAIN BERTOLLINI'S OBJECTION TO PARAGRAPH 16 OF THE PSR IN PART.**

Bertollini objects to the language in paragraph 16 of the PSR that indicates that he signed a consent to search "his residence located at 3471 Cerrillos Road, # 63 in Santa Fe, New Mexico." PSR ¶ 16, at 6.  Bertollini contends that the 3471 Cerrillos Road residence belongs solely to Leslie. See Objections at 2.  At the hearing on Bertollini's objections, the Court proposed adding a sentence to paragraph 16 to clarify that the residence at 3471 Cerrillos Road belonged solely to Leslie.  See Transcript at 13:2-8 (Court). The parties agreed that the Court's proposed change was acceptable.

-13-

See id. at 13:12 (Keefe); id. 13:17-18 (Yarbrough).  The Court will sustain Bertollini's objection to paragraph 16 in part and overrule it in part.  The Court will add the following sentence at the end of paragraph 16 of the PSR: "The Defendant states that the residence is owned solely by his wife, Leslie Bert."

## III.   THE COURT WILL SUSTAIN BERTOLLINI'S OBJECTION TO PARAGRAPH 19 OF THE PSR IN PART.

Bertollini objects to paragraph 19 of the PSR insofar as it indicates that he informed agents that there were rifles in the closet of the 3471 Cerrillos Road residence.  See Objections at 2. Bertollini asserts that Leslie, not he, told agents that the rifles were in the closet.  See id.  The Addendum states that the USPO obtained the information in paragraph 19 to which Bertollini objects from the investigative reports.  See Addendum at 3.  The Addendum also states, however, that Leslie provided a statement contradicting those reports and supporting Bertollini's recounting of events.  See id. at 3.  Given that this fact is disputed, but not material to the Court's determination of the sentence, the Court believes that it is sufficient to note at the end of paragraph 19 that there is a conflict between what the investigative reports state, and what Bertollini and Leslie maintain. The Court will thus sustain Bertollini's objection to paragraph 19 in part and overrule it in part.  The Court will add the following sentence at the end of paragraph 19 of the PSR: "Bertollini and his wife dispute the statement in the investigative report that he advised the agents that there were rifles in the closet."

## IV.   THE COURT WILL OVERRULE BERTOLLINI'S OBJECTION TO PARAGRAPH 36 OF THE PSR.

Bertollini objects to the USPO's application of U.S.S.G. § 2K2.1(a)(4)(B) and determination of his base-offense level, as reflected in paragraph 36 of the PSR.  See Objections at 2-3. Bertollini contends that he did not possess the requisite mens rea to be found guilty of illegally possessing a

sawed-off shotgun, and that, therefore, his base-offense level under § 2K2.1(a)(4)(B) should be 14, not 20.  See id.  The Court finds immaterial to the application of § 2K2.1(a)(4)(B) whether Bertollini knew which specific characteristics of the shotgun made it illegal.  Nothing in the language of the Guidelines or the advisory notes suggest that there is such a knowledge requirement for application of the enhancement, and the Court is reluctant to add requirements that Congress and/or the Sentencing Commission have not stated.  Nor does the caselaw suggest such an element is necessary when the statute for a conviction is the National Firearms Act.  See United States v. Barr, 32 F.3d at 1324 (ruling that a specific finding of knowledge of the weapon's incriminating characteristics is unnecessary, because a sawed-off shotgun is clearly not a traditionally lawful weapon and the defendant had no legitimate expectation that the weapon was not subject to regulation); United States v. Barnett, 2004 WL 764128, at **4-5 (holding that the government was not required to show the defendant was aware of the specific characteristics that brought the sawed-off shotgun under 26 U.S.C. § 5845 to support a conviction pursuant to 18 U.S.C. § 924).  The Court concludes that it is sufficient, for purposes of applying § 2K2.1(a)(4)(B), that Bertollini intended to possess a firearm with a shortened barrel.

Bertollini does not dispute that he possessed the sawed-off shotgun or that he knew it had a shortened barrel.  To the contrary, Bertollini represents that he personally measured, cut, and brandished the shotgun's barrel to achieve its shortened length.  See Objections at 2-3.  The Court believes that Bertollini's level of knowledge is adequate to support a base-offense level of 20 under § 2K2.1(a)(4)(B).  Cf. United States v. Barr, 32 F.3d at 1324 ("Where the characteristics of the weapon itself render it quasi-suspect, . . . [t]he Government need only prove that the defendant possessed the quasi-suspect weapon and observed its characteristics."); United States v. Barnett, 2004 WL 764128, at **4-5 (same).  The Court will therefore overrule Bertollini's objection to

paragraph 36 of the PSR.

## V.   THE COURT WILL SUSTAIN BERTOLLINI'S OBJECTION TO PARAGRAPH 37 OF THE PSR IN PART.

Bertollini objects to the USPO enhancing his offense level by 4 levels pursuant to U.S.S.G. § 2K2.1(b)(1)(B), as reflected in paragraph 37.  See Objections at 3-4.  Section 2K2.1(b)(1)(B) instructs that 4 levels should be added to a defendant's offense level if the offense involved between 8 and 24 firearms.  See U.S.S.G. § 2K2.1(b)(1)(B).  Bertollini contends that, while "he pled guilty to and admits to having been in possession of the two firearms found in his truck, . . . there is insufficient evidence to establish that [he] was in possession of the seven firearms recovered from his wife's residence. . . ."  Id.  Bertollini argues that, as such, the 4-level enhancement documented in paragraph 37 should be excluded from his advisory Guidelines' sentencing range calculation.

The Court will sustain Bertollini's objection in part and overrule it in part.  "[A]n individual is considered to constructively possess an item when he or she knowingly holds the power and ability to exercise dominion and control over the property."  United States v. Ruckman, 59 Fed. Appx. at 282.  The Court finds that, for purposes of applying § 2K2.1(b)(1)(B)'s sentencing enhancement, Bertollini constructively possessed six of the seven weapons seized from the 3471 Cerrillos Road residence.

> To prove constructive possession where there is joint occupancy, the government must present direct or circumstantial evidence to show some connection or nexus individually linking defendant to the firearms.  The requisite nexus is established where there is some evidence to support the plausible inference that defendant had knowledge of and access to the firearms.

Id.  The Court finds that the United States has demonstrated that requisite nexus with respect to six of the weapons at issue.  With the exception of the .38 caliber revolver, which Leslie purchased and possessed, the Court believes that, given Bertollini's conversation with law-enforcement agents,

-16-

the United States has established, by a preponderance of the evidence, that Bertollini bought the weapons seized at 3471 Cerrillos Road, that he knew Leslie was keeping them for him, and that he knew they were in the house.  See Transcript at 49:3-6 (Bert); 57:12-14.  The Court also believes that the United States has shown, by a preponderance of the evidence, that Bertollini had general knowledge of the location of and access to the seized firearms.  Bertollini was often given a key to Leslie's house when he visited and, frequently, the house was not locked at all.  See id. at 52:4-16. Bertollini accompanied Leslie and authorities to her master bedroom to look for the firearms that were eventually seized.  See id. at 53:7-12.  The weapons "were his he could look at them anytime he wanted."  Id. at 57:12-14.

The Court concludes that the evidence presented is sufficient to find, by a preponderance of the evidence, that Bertollini had knowledge of and access to six of the seven firearms seized from the 3471 Cerrillos Road residence, and that he had the ability to exercise dominion and control over them.  Because Leslie owned the .38 caliber revolver, however, the Court does not believe that Bertollini can be said to have had the ability to exercise dominion and control over it, and thus the Court refuses to find that Bertollini constructively possessed it.  See Transcript at 50:3; 50:11-13; 50:24-25 (Bert); id. at 64:2-6 (Bertollini).  The Court therefore finds that six, not seven, weapons seized from 3471 Cerrillos Road and the two weapons seized from Bertollini's truck should be considered in applying § 2K2.1(b)(1)(B).  Bertollini's offense thus involved 8 firearms and the 4-level enhancement reflected in paragraph 37 of the PSR was correctly applied.

## VI.   THE COURT WILL SUSTAIN BERTOLLINI'S OBJECTION TO PARAGRAPH 73 OF THE PSR IN PART.

Bertollini objects to the language in paragraph 73 of the PSR, referring to his reported involvement with neo-Nazi and anti-Semitic organizations.  See Objections at 4.  He asserts that he

has never been involved with or supported a "white supremacist" or neo-Nazi organization, and that the publication with which he was affiliated, the Eleventh Hour Remnant Messenger, was a Christian identity-outreach publication only.  See id.  The Court will sustain Bertollini's objection to paragraph 73 in part and overrule it in part.  The Court believes that it is sufficient to add two sentences at the end of paragraph 73 explaining Bertollini's position.  See Transcript at 106:13-20 (Court).  The parties agreed that the Court's proposed amendment to paragraph 73 was acceptable.  See id. at 106:21 (Keefe); id. at 24 (Yarbrough).  The Court will therefore add the following two sentences at the end of paragraph 73 of the PSR: "The Defendant asserts that, in his publications, he did not intend to support neo-Nazi or 'white supremacist' organizations.  He contends that he did not support violence or organizations that advocated violence."

## VII.   THE COURT WILL OVERRULE BERTOLLINI'S OBJECTION TO PARAGRAPH 84 OF THE PSR.

Based on his objections to paragraphs 36 and 37, Bertollini objects to the USPO's calculation of his advisory Guidelines' imprisonment range, contained in paragraph 84 of the PSR.  See Objections at 5.  The Court will, in accordance with its ruling on Bertollini's objections to paragraphs 36 and 37, overrule Bertollini's objection to paragraph 84.  With regard to paragraph 36, the Court concluded that Bertollini's level of knowledge was adequate to support a base-offense level of 20 under § 2K2.1(a)(4)(B), and, with respect to paragraph 37, the Court found that Bertollini's offense involved 8 firearms and that the 4-level enhancement reflected in paragraph 37 of the PSR was correctly applied.  The Court therefore concludes that there is no sound reason to alter paragraph 84.

**IT IS ORDERED** that the Defendant's Objections to the Presentence Report are sustained in part and overruled in part.  The Court orders the USPO to amend the PSR consistent with the

Court's determinations stated herein.  The Court will not order Bertollini's offense level to be

changed to 12 or his advisory Guidelines' imprisonment range to be changed to 15 to 21 months.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Larry Gomez
   Acting United States Attorney
Gregory J. Fouratt
   Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Michael A. Keefe
   Assistant Federal Public Defender
Albuquerque, New Mexico

     *Attorney for the Defendant*